UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANN M. BRYANT,

                             **Plaintiff,**

   vs.                                            5:19-CV-1119
                                                         (MAD/ATB)
CENTRAL SQUARE CENTRAL
SCHOOL DISTRICT,

                             **Defendant.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**JAMES D. HARTT, ESQ.**                **JAMES D. HARTT, ESQ.**
6 North Main Street
Suite 200f
Fairport, New York 14450
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC –**    **JEFFREY F. ALLEN, ESQ.**
**ROCHESTER OFFICE**
350 Liden Oaks, Third Floor
Rochester, New York 14625
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff Ann Bryant initiated this action on September 10, 2019, against Defendant Central Square Central School District. *See* Dkt. No. 1. Following a motion to dismiss, Plaintiff's claims for disability discrimination and hostile work environment pursuant to the Americans with Disabilities Act remain. *See* Dkt. No. 18. Presently before this Court is Defendant's motion for summary judgment. *See* Dkt. No. 35. For the following reasons, Defendant's motion is granted.

1

## II. BACKGROUND

Plaintiff was employed by Defendant as a custodial worker at the Central Square Middle School. Dkt. No. 35-1 at ¶¶ 1-2. On January 16, 2018, Plaintiff was assaulted by a student and shoved into a locker. Dkt. No. 35-1 at ¶ 4. Plaintiff was walking down a hallway when a student sprinted out of a classroom and directly at her. Dkt. No. 38. The student ran into Plaintiff, extended his arms, and shoved Plaintiff into a wall of lockers. *Id.* Although it is not visible on the security footage of the incident, Plaintiff testified that the student then struck her on the back multiple times. Dkt. No. 41-3 at 13. Following the push into the lockers, Plaintiff is standing in between the security camera and the student, and the student's actions are not visible for approximately two seconds. Dkt. No. 38.

Following the incident, Plaintiff informed her supervisor, Walter Rice, that she had been assaulted by a student, pushed into a locker, and was in pain. Dkt. No. 35-1 at ¶ 4. Subsequently, Plaintiff completed an accident report, handed it to her supervisor, and went to the school nurse. *Id*. at ¶ 6. The school nurse applied ice packs to her arm, shoulder, and back. *Id.* at ¶ 8.

Paul Brissette is the Director of Facilities for Defendant and oversees all the grounds, maintenance, and custodial services for ten buildings, including the Central Square Middle School. *Id.* at ¶ 3. After hearing of the incident, Mr. Brissette came to the nurse's office and recommended that Plaintiff go to urgent care. *Id.* at ¶ 9.

The following day, January 17, 2018, Plaintiff met with Mr. Brissette in his office to review her accident report. *Id.* at ¶ 12. Mr. Brissette always reviews the accident reports in person, and Plaintiff has previously met with Mr. Brissette to review accident reports. *Id.* at ¶ 14. After reviewing the report, Mr. Brissette played the security camera footage for Plaintiff at least three times, "to investigate to see where she was hit during the incident," because it is not

2

apparent from the video whether she was struck.  *Id.* at ¶ 21.

Plaintiff states that being forced the watch the video multiple times "caused Plaintiff to cry aloud, and to endure severe emotional trauma."  Dkt. No. 41-11 at ¶ 5.  Plaintiff testified that after viewing the video the first time, she tried to leave Mr. Brissette's office, but he made her stay.  Dkt. No. 41-3 at 14.  After reviewing the video at least three times, Mr. Brissette informed Plaintiff that if she made a complaint to the police about the incident, the school would "have to turn the video over to the police."  Dkt. No. 35-1 at ¶ 22.  By the end of the meeting, Plaintiff testified that she was in tears.  *Id.* at 12.  On January 24, 2018, a letter was sent by Defendant to teachers at the school, which, according to Plaintiff, denied and minimized the assault.  Dkt. No. 41-11 at ¶ 16.

The week following the incident, Plaintiff delivered a note to Mr. Brissette's office, from her orthopedic specialist, for her to be put on light duty.  Dkt. No. 35-1 at ¶ 30.  Plaintiff was on light duty until March 2018, when an MRI revealed a torn rotator cuff that required surgery, and Plaintiff took a medical leave of absence.  Dkt. No. 41-11 at ¶ 17.  Plaintiff remained on medical leave until she retired in September 2019.  Dkt. No. 35-1 at ¶ 35.

Plaintiff alleges that she was discriminatorily denied a "longevity stipend" while out on medical leave, in July 2018.  *See* Dkt. No. 1 at ¶ 31.  Defendant incorrectly told Plaintiff that she was not eligible for a longevity stipend because she was out on medical leave.  Dkt. No. 35-1 at ¶ 40.  Accordingly, Plaintiff filed a complaint with the New York State Division of Human Rights, alleging she was denied the longevity stipend because of her disability, a torn rotator cuff.  Dkt. No. 41-11 at ¶ 18.  In December 2018, the Division of Human Rights issued a probable cause determination.  Dkt. No. 41-6.  Defendant originally told the investigator that Plaintiff was not eligible for the longevity stipend because there was a provision in her collective bargaining

agreement "that requires employees who do not work for a full year to reimburse [Defendant] for overages." *Id.* at 4. "However, when asked by the Division of Human Rights for the relevant contractual provision, [Defendant] stated that the information provided in the response was based on the wrong bargaining unit." *Id.* Defendant subsequently issued Plaintiff the longevity stipend the next period, and Plaintiff received it in January 2019. *Id.*

## III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36–37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions on its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the Court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the Court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary

4

judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

"'Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson*, 477 U.S. at 252). "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' ... and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

B. **Disability Discrimination**

Disability discrimination claims are evaluated pursuant to the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See, e.g.*, *Donley v. Vill. of Yorkville*, No. 6:14-CV-1324, 2019 WL 3817054 (N.D.N.Y. Aug. 13, 2019). Under the *McDonnell Douglas* framework,

> the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. 411 U.S. at 802. If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its action. *Id.* Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination.

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)). To rebut the defendant's articulated justification for the adverse employment action, "the plaintiff must show *both* that the [defendant's] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511

n.4 (1993) (internal quotations omitted).

To establish a *prima facie* case of discrimination under the ADA, Plaintiff must demonstrate that "(1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without accommodation; and (4) she suffered an adverse employment action because of her disability." *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 Fed. Appx. 123, 127 (2d Cir. 2019) (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)).

Defendant only argues that Plaintiff failed to establish that she suffered an adverse employment action. Plaintiff contends that the failure to timely remit payment of the longevity stipend was an adverse employment action.

A plaintiff suffers an "adverse employment action" under the ADA when "he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). It must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* The Second Circuit has "no bright-line rule to determine whether a challenged employment action is sufficiently significant to serve as the basis for a claim of discrimination." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). In *Galabya*, the Second Circuit gave the following examples of adverse employment actions: "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." *Galabya*, 202 F.3d at 640. Courts have also found "involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the

employee, among other things, constitute adverse employment actions." *See, e.g.*, *Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317, 328 (N.D.N.Y. 2010) (citing *Little v. NBC*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002)).

Plaintiff offers no support for her position that a six-month delay in payment of the longevity stipend is an adverse action is an adverse action. "[I]t bears notice that a plaintiff seeking to assert a discrimination claim based on a delay in the receipt of compensation faces a substantial hurdle." *Castro v. City of New York*, 24 F. Supp. 3d 250, 262 n.24 (E.D.N.Y. 2014). Here, Plaintiff's delay in receipt of the longevity stipend is "a mere inconvenience," and not a materially adverse employment action. *See Miller v. New York City Health & Hosp. Corp.*, No. 00 CIV. 140, 2005 WL 2022016, *6 (S.D.N.Y. Aug. 22, 2005) (holding that a seven-month delay in overtime payment was not an adverse action). Courts have regularly held that a delay in payment of less than a year is not an adverse action. *See Moschetti v. New York City Dep't of Educ.*, No. 15-CV-3161, 2018 WL 4759787, *15 (S.D.N.Y. Sept. 28, 2018) (collecting cases). Because Plaintiff has received her longevity stipend, and "there is no evidence that the delay caused [her] any economic harm," there is no indication that "the delay constituted a materially adverse *change* to the terms or conditions of [her] employment." *Castro*, 24 F. Supp. 3d at 263; *see also Fanning v. Potter*, 614 F.3d 845, 850 (8th Cir. 2010) (holding that "brief delays in receipt do not rise to level of a materially adverse action"); *Matthews v. Donahoe*, 493 Fed. Appx. 796, 800 (7th Cir. 2012) ("[T]he mere two-month delay in [plaintiff's] continuation of pay, though an annoyance, had no effect on the terms of her employment"). Accordingly, Plaintiff has failed to establish a *prima facie* case of disability discrimination.

C.   **Hostile Work Environment**

To prevail on a hostile work environment claim based on disability, Plaintiff must show

"(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)). Additionally, Plaintiff must demonstrate that she was subjected to hostility because of her disability. *See Farina v. Branford Bd. of Educ.*, 458 Fed. Appx. 13, 17 (2d Cir. 2011); *Zavala v. Cornell Univ.*, 9 F. Supp. 3d 213, 220 (N.D.N.Y. 2014).

For a work environment to be sufficiently hostile, the workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (citing *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)). The determination of hostility "depends on whether a reasonable person would find the work environment to be hostile and whether plaintiffs subjectively perceived it to be so." *Id.* Factors to consider in evaluating a hostile work environment claim include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). A hostile work environment claim under the ADA, therefore, "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Fox*, 918 F.3d at 74.

Plaintiff argues that she suffered a hostile work environment because of her January 17, 2018 meeting with Mr. Brissette, the letter sent to teachers at the school about the incident, and the denial of her longevity stipend. According to Plaintiff, she was forced to watch a video of a

traumatic experience at least three times while being interrogated about it, then a letter was sent to all of the teachers denying and minimizing the incident. Defendant moves for summary judgment, arguing that the hostile conduct was not severe or pervasive, and, even if it were, it was not because of Plaintiff's disability.

The Court agrees that there is no evidence to establish that Mr. Brissette reviewed the video with Plaintiff, or sent the letter to the teachers, because Plaintiff was disabled or because he perceived Plaintiff as having a disability. It is "axiomatic that Plaintiff must establish that the hostile conduct occurred on account of [her] disability to make out a disability-based hostile work environment claim." *Johnson v. City of New York*, No. 10 CIV. 6294, 2012 WL 1076008, \*6 (S.D.N.Y. Mar. 28, 2012) (citing *Thompson v. N.Y.C. Dep't of Prob.*, 348 Fed. Appx. 643, 646 (2d Cir. 2009)). Courts regularly grant summary judgment when there is no "causal connection" between the alleged hostile acts and the protected characteristic. *Marecheau v. Equal Emp. Pracs. Comm'n*, No. 13-CV-2440, 2014 WL 5026142, \*8 (S.D.N.Y. Sept. 30, 2014); *see also Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination"); *Tassy v. Buttigieg*, 540 F. Supp. 3d 228, 237 (E.D.N.Y. 2021) ("Here, the record does not support a reasonable inference that the mistreatment occurred because of a protected characteristic"). Indeed, "federal anti-discrimination statutes are not intended to create a generalized civility code for the workplace." *Amie v. Shinseki*, 806 F. Supp. 2d 641, 646 (W.D.N.Y. 2011). Rather, the hostile act must have a nexus to the protected characteristic. *See, e.g.*, *De Figueroa v. New York*, 403 F. Supp. 3d 133, 161 (E.D.N.Y. 2019) ("[T]here are no indications, such as contemporaneous

9

disparaging remarks, that these actions were taken because of Plaintiff's disability") (citing *Raniola v. Bratton*, 243 F.3d 610, 621–22 (2d Cir. 2001) ("To demonstrate that all of the alleged abuse was on account of [a protected characteristic], [a plaintiff] may either show that the ... verbal abuse indicated that other adverse treatment was also suffered on account of [the protected characteristic], or resort to circumstantial proof that the other adverse treatment that was not explicitly [based on the protected characteristic] was, nevertheless, suffered on account of [it]")).

Here, at worst, Mr. Brissette handled a traumatic experience for Plaintiff callously. But there is no "causal connection" between the alleged lack of tact and Plaintiff's disability. *Marecheau*, 2014 WL 5026142, at *8. There is no allegation that Mr. Brissette had any knowledge of Plaintiff's disability on January 17, 2018, much less harbored any discriminatory animus towards Plaintiff. And Mr. Brissette never made a remark, much less a disparaging remark, regarding Plaintiff's disability. *See, e.g., Raniola*, 243 F.3d at 621–22. In fact, Plaintiff would not receive a torn rotator cuff diagnosis until two months after the meeting. *See* 35-1 at ¶ 35. Plaintiff fails to offer any evidence that Mr. Brissette perceived her as disabled, and not just merely injured, prior to her torn rotator cuff diagnosis. Mr. Brissette, therefore, did not review the video with Plaintiff because she was disabled.

Similarly, Defendant sent a letter to the teachers at the middle school to inform them what transpired well before Plaintiff informed Defendant she was disabled, on January 28, 2018. The letter makes no reference to Plaintiff's injury or disability, but is rather contained to the events that transpired on January 16. Defendant, of course, had a legitimate reason to inform the teachers at the school of an assault that was committed by a student against a custodial worker. To the extent Plaintiff objects to the veracity of the letter, a hostile work environment claim is the wrong cause of action.

Lastly, although it is unclear if Plaintiff relies on the denial of her longevity stipend as part of her hostile work environment claim, it is also insufficient to support her claim. A single incident must be "extraordinarily severe" to support a hostile work environment claim. *Fox*, 918 F.3d at 74. A delay in receiving a single check is not an extraordinarily severe incident sufficient to support a hostile work environment claim.

## IV. CONCLUSION

After carefully reviewing the record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 35) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 24, 2022
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge